THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

SAMMIE SAPPINGTON, et al., )
       Plaintiffs, )
       )
v. )
       ) No. 04-5076-CV-SW-FJG
SKYJACK INC., et al., )
       Defendants. )

**ORDER**

Pending before the Court are (1) Defendant RSC's Motion for Summary Judgment or in the Alternative Motion to Dismiss (Doc. No. 100); (2) Motion to Bar Testimony of John Ward (Doc. No. 88); and (3) Plaintiffs' motion challenging admissibility of certain expert testimony proffered by defendants (Doc. No. 83). Each will be considered below.

**I.    Background**

On October 4, 2001, plaintiffs'[1] decedent, Doyle Sappington, suffered fatal injuries when the scissors lift he was operating tipped over. The lift at issue is a SJII 4626 manufactured by Defendant Skyjack Inc. ("Skyjack"). It was sold to Central States Equipment, and eventually came into the possession of Defendant Rental Service Corporation ("RSC"). Prior to October 3, 2001, RSC rented the lift at issue to Eliason & Knuth, and the lift at issue was delivered to Eliason & Knuth at the Saks Fifth Avenue Parking Garage project at 47th and Pennsylvania. J.E. Dunn was the general contractor for the Saks Fifth Avenue Parking Garage project. On October 3, 2001, prior to the accident, the lift was in its "as manufactured" conduction, with the exception of normal wear

---

[1] Plaintiff Evelyn Sappington is the decedent's mother. Plaintiff Sammie Sappington is his daughter, and plaintiff Justin Sappington is his son. Doyle Sappington apparently had another child from a previous marriage, but that child is not a plaintiff in this action.

and tear. On October 3, 2001, Doyle Sappington was employed as a carpenter foreman for J.E. Dunn. Prior to October 3, 2001, Doyle Sappington had received training on the safe and proper use of a scissor lift. Immediately before his injury, Doyle Sappington had the Skyjack SJ II 4626, elevated to about 26 feet in the air. Doyle Sappington was killed when the Skyjack SJ II 4626 drove backwards into the area where the sidewalk had been removed earlier, and fell to the ground.

## II. Defendant RSC's Motion for Summary Judgment or in the Alternative Motion to Dismiss (Doc. No. 100)

Defendant RSC seeks judgment in its favor. It moves for summary judgment pursuant to Missouri's law regarding dealers of used goods, or, in the alternative, dismissal pursuant to RSMo § 537.762, Missouri's innocent seller statute.

### A. Facts

On September 24, 2001, RSC leased the subject scissor lift to Eliason & Knuth, a subcontractor on the Saks Fifth Avenue garage construction project. The scissor lift RSC leased to Eliason & Knuth was not a new unit, but rather had been previously leased and used numerous times. Although Mr. Sappington worked for J.E. Dunn and not Eliason & Knuth at the time of the accident, he nonetheless took possession of and operated the scissor lift. Plaintiffs state that Mr. Sappington was authorized to borrow the lift, however.

Plaintiffs' claims against both defendants are premised solely upon a strict liability theory. Plaintiffs allege the scissor lift was defective and unreasonably dangerous because it did not contain a pothole protection device. Plaintiffs' expert, Dr. Kenneth Blundell, notes that pothole protection is a drop-down device on the base of the scissor lift that lowers the ground clearance of the lift to increase the stability of the lift. Blundell testified in his deposition that he had no information to suggest that RSC knew the lift was unsafe, and

2

that neither OSHA nor Dr. Blundell had any criticism of RSC's role in maintaining that particular unit. Dr. Blundell testified that in renting the subject scissor lift to Eliason & Knuth, RSC inadvertently rented an unsafe product.

Skyjack is the named insured under a CGL policy with Lexington Insurance Company (Policy Number 1320306) for the period of June 1, 2001 through June 1, 2002, with an applicable limit of one million dollars per occurrence.[2] Skyjack is the named insured under a CGL umbrella policy with Lexington Insurance Company (Policy Number 5640757) for the period of June 1, 2001, through June 1, 2002, with an applicable limit of ten million dollars per occurrence.[3] RSC states it is unaware of any facts or circumstances upon which a verdict in this action might be reached against RSC other than RSC's status as a renter/seller of the scissor lift in the stream of commerce.

B.   Motion for Summary Judgment as Dealer in Used Goods

Defendant RSC states that it is entitled to judgment as a matter of law in its favor because the scissor lift RSC leased to Eliason & Knuth was not a new unit, but rather had been previously leased and used. Defendant RSC cites Harber v. Altec Industries, Inc., 812 F. Supp. 954 (W.D. Mo. 1993) (affirmed at 5 F.3d 339, 340 (8th Cir. 1993)) for the proposition that Missouri law does not impose strict liability upon a dealer of used goods.

Plaintiffs respond that RSC is liable as a commercial lessor, and not as a dealer in used goods, and therefore Harber is inapplicable to the case at hand. Plaintiffs cite several

---

[2] Plaintiffs state that RSC's statement is incomplete, in that the policy states that it has an aggregate limit of $2,000,000 for products liability, and there is no information in the record as to how much of that aggregate limit has already been used by Skyjack.

[3] Again, plaintiffs state that RSC's statement is incomplete, in that the policy states that it has an aggregate limit of $10,000,000 for products liability, and there is no information as to how much of the aggregate limit has already been utilized by Skyjack during the policy year.

3

Missouri cases in which a commercial lessor was found liable under a strict product liability theory.  See Gabbard v. Stephenson Orchard, Inc., 565 S.W.2d 752 (Mo. App. W.D. 1978); Commercial Distribution Center, Inc. v. St. Regis Paper Co., 689 S.W.2d 664 (Mo. App. W.D. 1985); Welkener v. Kirkwood Drug Store Co., 734 S.W.2d 233 (Mo. App. E.D. 1978); and Hoeft v. Louisville Ladder Company, 984 S.W.2d 298 (Mo. App. W.D. 1995).

Defendant RSC replies that all but one of these cases pre-date enactment of Missouri's Innocent Seller Statute, RSMo § 537.760, and defendant states that Missouri's policy as to merchants in used goods changed in 1987 when Missouri enacted that statute.

Notably, however, this Court's notes that the Eighth Circuit found that the opinion in Harber was inapplicable in a commercial lessor context in Wynia v. Richard-Ewing Equip. Co., 17 F .3d 1084, 1089 (8th Cir.1994).  See also Heaviside v. Rental Service Corporation, 2007 WL 2156302, *2 (E.D. Mo. 2007) (noting that Wynia is still applicable to cases involving commercial lessors).  Thus, summary judgment will be **DENIED**.

C. Motion to Dismiss under RSMo § 537.762

Missouri's Innocent Seller Statute, RSMo § 537.762, provides:

1. A defendant whose liability is based solely on his status as a seller in the stream of commerce may be dismissed from a products liability claim as provided in this section.

2. This section shall apply to any products liability claim in which another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim.

3. A defendant may move for dismissal under this section within the time for filing an answer or other responsive pleading unless permitted by the court at a later time for good cause shown.  The motion shall be accompanied by an affidavit which shall be made under oath and shall state that the defendant is aware of no facts or circumstances upon which a verdict might be reached against him, other than his status as a seller in the stream of commerce.

4

4. The parties shall have sixty days in which to conduct discovery on the issues raised in the motion and affidavit. The court for good cause shown, may extend the time for discovery, and may enter a protective order pursuant to the rules of civil procedure regarding the scope of discovery on other issues.

5. Any party may move for a hearing on a motion to dismiss under this section. If the requirements of subsections 2 and 3 of this section are met, and no party comes forward at such a hearing with evidence of facts which would render the defendant seeking dismissal under this section liable on some basis other than his status as a seller in the stream of commerce, the court shall dismiss without prejudice the claim as to that defendant.

6. No order of dismissal under this section shall operate to divest a court of venue or jurisdiction otherwise proper at the time the action was commenced. A defendant dismissed pursuant to this section shall be considered to remain a party to such action only for such purposes.

7. An order of dismissal under this section shall be interlocutory until final disposition of plaintiff's claim by settlement or judgment and may be set aside for good cause shown at anytime prior to such disposition.

RSMo § 537.762 (2000).

In Gramex Corp. v. Green Supply Co., 89 S.W.3d 432 (Mo. 2002), the Missouri Supreme Court held that RSMo § 537.762 is both procedural and substantive in nature. Defendant states that as this statute is substantive in nature, it may be used in federal court. The Court agrees with defendant's assertion.

Defendant RSC states that it meets all of the elements of the statute, in that: (1) the action is based solely on RSC's status as a seller in the stream of commerce, and the sole remaining count against RSC is a claim of strict product liability; (2) RSC is aware of no facts or circumstances upon which a verdict might be reached against it, other than its status as a seller in the stream of commerce, and plaintiffs' expert Blundell testified that RSC inadvertently rented and unsafe product; and (3) total recovery for plaintiffs' claims may be had from Skyjack, the manufacturer, which has a one million dollar insurance policy

and a ten million umbrella policy.

Plaintiffs respond that defendant's motion is not timely; however, this Court finds that defendant brought this motion at the earliest possible time, as until January 6, 2006 (twenty days before the filing of this motion), plaintiffs had maintained an independent negligence claim against RSC. The innocent seller statute does not apply to actions against innocent sellers that include independent negligence claims. See RSMo § 537.762.1, which states that "[a] defendant whose liability is based solely on his status as a seller in the stream of commerce may be dismissed." (Emphasis added.) Plaintiffs further argue that RSC has failed to demonstrate that full recovery can be had from Skyjack in that there is "only" $12 million worth of aggregate insurance coverage; however, defendant RSC notes that full recovery can be had from Skyjack, in that beyond the $12 million insurance policies, Skyjack has assets including a 25,000 square foot service and parts distribution center in St. Charles, Illinois, a 114,000 square foot manufacturing plant in Iowa, and a 60,000 square foot storage facility in Iowa. The Court finds that, given the facts of this case, it is unlikely in the extreme that defendant Skyjack does not have sufficient assets to provide full recovery to plaintiff. Further, although plaintiffs argue that RSC is not an "innocent" seller, as pointed out by defendant RSC, knowledge is not an element of a strict liability claim. See RSMo § 537.760.

Therefore, Defendant RSC's motion to dismiss (Doc. No. 100) will be **GRANTED.** Pursuant to RSMo § 537.762 (2000), defendant RSC is **DISMISSED** from this matter.

### III. Motions to Strike Experts

A. Standard

As a preliminary matter, "[t]he proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." Lauzon v. Senco Prods., Inc., 270 F.3d

6

681, 686 (8th Cir. 2001).

> Federal Rule of Evidence 702 governs admissibility of expert testimony. See Fed. R. Evid. 702. "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir. 1999), aff'd, 528 U.S. 440, 120 S. Ct. 1011, 145 L. Ed. 2d 445 (2000); see also Daubert [v. Merrell Dow Pharm., 509 U.S. 579, 588, 113 S. Ct. 2786 (citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169, 109 S. Ct. 439, 102 L. Ed. 2d 445 (1988)) (highlighting the "'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion testimony'"). The rule clearly "is one of admissibility rather than exclusion." Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991).
>
> The proposed expert testimony must meet three prerequisites in order to be admitted under Rule 702. 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.02[3] (2001). First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. Id. This is the basic rule of relevance. Second, the proposed witness must be qualified to assist the finder of fact. Id. Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires ...." Id.; see also Daubert 509 U.S. at 591, 113 S. Ct. 2786.

Lauzon, 270 F.3d at 686. In the seminal case regarding expert opinion testimony, Daubert

v. Merrell Dow Pharmaceuticals,

> the U.S. Supreme Court emphasized the district court's gatekeeper role when screening expert testimony for relevance and reliability.... Daubert provides a number of nonexclusive factors a court can apply in performing this role: 1) whether the theory or technique can be (and has been) tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the theory has been generally accepted.... Daubert's progeny provides additional factors such as: whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.

270 F.3d at 686 - 87 (internal quotation marks and citations omitted).

    B.    Motion to Bar Testimony of John Ward (Doc. No. 88)

Defendant Skyjack moves this Court to bar Dr. John Ward from testifying in this

case. Dr. Ward has been designated by plaintiffs to testify about the economic impact of

Doyle Sappington's death on his mother (plaintiff Evelyn Sappington) and two of his children (plaintiffs Justin and Sammie Sappington). Defendant Skyjack argues that Dr. Ward's proposed testimony is inadmissible and should be barred by Daubert and FRE 702.

Defendant Skyjack does not challenge Dr. Ward's qualifications in the field of economics. However, defendant Skyjack states that Dr. Ward's opinions are based on insufficient facts and data as to the decedent's earnings record. Further, defendant questions Dr. Ward's inclusion of overtime payments in projected future income, as well as Dr. Ward's assumption that the decedent would establish a relationship with his children. Defendant also states that Dr. Ward is attempting to put a value on things that do not exist (i.e., a relationship between the decedent and his children and mother).

Plaintiffs argue that defendant's criticisms go to the foundations of Dr. Ward's testimony. Plaintiffs state that if no evidence at trial supports the assumptions made by Dr. Ward, then the Court would be within its discretion to refuse to permit Dr. Ward to testify regarding that category of loss; however, if evidence supports the category of loss, then Dr. Ward's testimony is admissible and it would be up to the trier of fact to determine how much of a particular category of loss the plaintiffs may be entitled to obtain.

The Court agrees with plaintiff; to the extent that the foundation of Dr. Ward's testimony is supported by the evidence presented at trial, Dr. Ward can testify in accordance with his expert report. However, if at trial there is limited or no factual support for Dr. Ward's positions, it would be improper to allow Dr. Ward to make those assertions. Therefore, defendant's motion to strike the testimony of Dr. Ward is **DENIED** without prejudice to its reassertion at trial.

    C.    Plaintiffs' motion challenging admissibility of certain expert testimony proffered by defendants (Doc. No. 83)

Plaintiffs challenge the testimony of experts: (1) for Skyjack: Barris Evulich, Leslie Knoll, Otto Hutka, and Brad Boehler; and (2) for RSC: R.K. Smith and David Dale. As this Court has granted RSC's motion to dismiss, plaintiffs' motion as applied to defendant RSC's experts is **DENIED AS MOOT.**

Plaintiffs state that: (1) the testimony of Skyjack's experts Evulich and Knoll is cumulative, and Skyjack should be limited to one of these experts; (2) the 1990 ANSI standards are irrelevant and the experts should not be allowed to testify that compliance with the 1990 ANSI standards makes the SJII 3626 non-defective; (3) the experts should not be allowed to testify that the ANSI Manual of Responsibilities applied to regulate the decedent's conduct; (4) defendants' experts performed no independent testing in this matter; (5) to the extent the experts attempt to assess fault against J.E. Dunn Construction Company, a non-party to the litigation, and plaintiffs assert this is irrelevant, see Jensen v. ARA Services, Inc., 736 S.W.2d 374, 377 (Mo. 1987); (6) Evulich should be precluded from testifying the machine was not unreasonably dangerous because at deposition he refused to answer questions whether he considered foreseeable product misuse in reaching his conclusions, see Gerow v. Mitch Crawford Holiday Motors, 987 S.W.2d 359, 363 (Mo. App. W.D. 1999); (7) Knoll discusses OSHA standards, which are not relevant, are prejudicial, and should be excluded from the evidence; and (8) Knoll should not be allowed to speculate as to the conduct of Sappington, opining that decedent was purposely maneuvering the lift close to the edge of the drop-off prior to the accident.

Defendants respond: (1) the testimony of Knoll and Evulich is not duplicative because each witness brings a unique perspective, and the issues in this case will be resolved on common understanding in the industry which requires at least two individuals[4];

---

[4] Defendants cite no authority for this proposition.

(2) the 1990 ANSI standards are relevant, further noting that the experts do not rely solely on the 1990 ANSI standards in forming their testimony; (3) the ANSI Manual of Responsibilities is relevant in an examination of the comparative fault of decedent; (4) no independent testing in this matter was necessary, as the plaintiffs have the burden of proof in this matter and defendants' experts point out the flaws in plaintiffs' experts' opinions; (5) although defendants cannot apportion the fault of J.E. Dunn (the decedent's employer), under Missouri law, they can present evidence that the actions or inactions of the non-party employer were the sole cause of decedent's death. Oldaker v. Peters, 817 S.W.2d 245, 253 (Mo. 1991); (6) Evulich provides information in his report discussing the foreseeability of decedent's misuse of the lift from the standpoint of the manufacturer; and (7) OSHA standards are relevant as to the conduct of J.E. Dunn.

After reviewing the parties' briefs and the experts' reports, the Court finds that the reports shall not be excluded in their entirety, but some limitations must be placed on defendant Skyjack's experts; thus, plaintiffs' motion will be **GRANTED IN PART**. In accordance with the Eighth Circuit's previous opinion in this matter, the 1990 ANSI standard is only relevant if a state of the art defense could be asserted, and here a state of the art defense is not available as this is no longer a negligence action. See Sappington v. Skyjack, 512 F.3d 440, 452 (8th Cir. 2008). Therefore, the experts will not be allowed to testify regarding the 1990 ANSI standard. Further, the experts will be precluded from speculating as to what the decedent was thinking at the time of the accident. Additionally, the Court finds the testimony of experts Knoll and Evulich to be duplicative; at the time of trial, defendant Skyjack may only use the testimony of one of these witnesses. Defendant Skyjack may make this determination when it files its revised witness list on or before June 18, 2008, pursuant to the Court's Order of February 21, 2008 (Doc. No. 225). The

remainder of plaintiffs' objections to defendants' expert witnesses are **OVERRULED**.

### IV. Conclusion

Therefore, for the foregoing reasons:

(1) Defendant RSC's Motion for Summary Judgment (Doc. No. 100) is **DENIED**;

(2) Defendant RSC's Alternative Motion to Dismiss (Doc. No. 100) is **GRANTED**;

(3) Defendant Skyjack's Motion to Bar Testimony of John Ward (Doc. No. 88) is **DENIED WITHOUT PREJUDICE** to reassertion at trial; and

(4) Plaintiffs' motion challenging admissibility of certain expert testimony proffered by defendants (Doc. No. 83) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

**/S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
Chief United States District Judge

Dated: 3/20/08
Kansas City, Missouri